OPINION
Defendant-appellant Shirley Wilson appeals the June 23, 1998 Judgment Entry of the Tuscarawas County Court of Common Pleas, entering judgment against her and in favor of plaintiff-appellee Joan Sonnhalter on appellee's quantum meruit/unjust enrichment and breach of contract claims.
 STATEMENT OF THE FACTS AND CASE
Appellee and appellant met while working at South Broadway Nursing Home in New Philadelphia, Ohio. Appellee, a registered nurse, was the Director of Nurses at the facility. Appellant, a licensed practical nurse, worked the night shift. Appellee left her position in March, 1994. Appellant left her position sometime thereafter. After completing the appropriate application with the State of Ohio, appellant commenced a home healthcare business, Caring Hands Home Health Care, in September, 1994. Thereafter, appellant contacted appellee to see if appellee would be interested in serving the business. On or about September 24, 1994, appellee visited appellant at the Caring Hands' office in Bolivar, Ohio. After discussing the nature and extent of appellee's duties, the parties agreed appellee would serve as Director of Nurses. Appellant advised appellee she (appellant) could not pay appellee for her services, but would do so when the business "got going". The parties did not discuss the specific compensation appellee would receive from appellant. Appellee agreed to the arrangement. The parties understood appellee's position with Caring Hands was not full-time and appellee would continue her work as a private in-home caregiver and at the House of Loretto. As Director of Nurses, appellee performed such duties as training employees; providing in-service sessions for employees; conducting home visits and patient assessments; and completing paperwork and certification materials. Appellee was appellant's only employee who was qualified and licensed, under Ohio law, to supervise and assume responsibility for the employees of and the care provided by appellant's business to its patients. Additionally, in order for appellant's business to be eligible to participate in State subsidized healthcare programs, appellant was required to employ a registered nurse. During appellee's tenure as Director of Nurses at Caring Hands, appellee was the only registered nurse employed by appellant. Although the issue of appellee's compensation was raised on several occasions between September 24, 1994, and June 29, 1995, the parties never reached an agreement as to the specific amount. On June 29, 1995, appellee requested appellant pay her a salary of $600 per week, however, appellant rejected the amount and offered $300 per week, which appellee accepted. In July, 1995, appellant presented appellee with a paycheck for $300. This paycheck was the first and only compensation appellee ever received from appellant. After June 29, 1995, appellee continued to work for appellant until August 31, 1995. On January 10, 1996, appellee filed an action on account in the Tuscarawas County Court of Common Pleas, alleging appellant failed to pay her for professional services she rendered on behalf of appellant between September 24, 1994, and August 31, 1995. On March 26, 1997, appellee filed a Motion for Leave to File an Amended Complaint, which the trial court granted via Judgment Entry dated April 15, 1997. On April 21, 1997, appellee filed her First Amended Complaint, raising claims of breach of contract, quantum meruit/unjust enrichment, a violation of R.C. 4113.15, and a violation of the Fair Labor Standards Act. Appellant filed a timely amended answer and counterclaim. The counterclaim essentially raised a claim of tortious interference with business. On April 15, 1997, appellant filed a Motion to Compel Discovery seeking an order requiring appellee to provide information regarding the names of the private patients appellee cared for and the amount of compensation she received from those patients during the period she worked for appellant (September, 1994, through August 31, 1995). Via Judgment Entry dated May 1, 1997, the trial court overruled appellant's motion, finding the information appellant sought "would not appear to be reasonably calculated to lead to the discovery of admissible evidence." May 1, 1997 Judgment Entry at 2. On August 17, 1997, appellant filed a Motion for Summary Judgment on counts I (breach of contract), III (violation of R.C.4113.15), and IV (violation of the Fair Labor Standards Act) of appellee's amended complaint. Appellee filed a response to appellant's motion as well as a cross-motion for summary judgment on counts I, II (quantum meruit/unjust enrichment), and III of her amended complaint. The trial court conducted an oral hearing on appellant's motion and appellee's cross-motion. Via Judgment Entry dated September 29, 1997, the trial court overruled appellant's motion for summary judgment in its entirety and overruled appellee's motion for summary judgment relative to count I (breach of contract). The trial court granted appellee's motion with respect to counts II and III. With respect to count II, the trial court found an issue as to the amount of damages remained to be decided by the trier of fact. As to count III, the trial court awarded appellee judgment in the amount of $131.40. The matter came on for bench trial on April 30, 1998. Via Judgment Entry dated May 4, 1998, the trial court ordered the parties to simultaneously file proposed findings of fact and conclusions of law. Via Judgment Entry dated June 23, 1998, the trial court awarded judgment in favor of appellee and against appellant on appellee's breach of contract claim in the amount of $2400; and judgment in favor of appellee and against appellant on appellee's quantum meruit claim in the amount of $5000. It is from the trial court's June 23, 1998 Judgment Entry appellant appeals, raising the following assignments of error:
I. THE TRIAL COURT COMMITTED ERROR IN REFUSING TO ORDER PLAINTIFF-APPELLEE TO RESPOND TO QUESTIONS ASKED ON DEPOSITION.
II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING TO APPELLEE A JUDGMENT FOR THE SUM OF $2,400.00 REPRESENTING $300.00 PER WEEK FOR AN EIGHT (8) WEEK PERIOD, JUNE 29, 1995, AND AUGUST 31, 1995.
III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING THE APPELLEE DAMAGES UNDER 4113.15 IN THE AMOUNT OF $131.40.
IV. THE TRIAL COURT COMMITTED ERROR IN FAILING TO SUSTAIN APPELLANT'S MOTION TO DISMISS AT THE CLOSE OF APPELLEE'S EVIDENCE AND WAS RENEWED AT THE CLOSE OF ALL EVIDENCE IN THAT THERE WAS NO EVIDENCE AS TO THE QUANTITY, QUALITY OR BENEFITS PROVIDED BY APPELLEE TO APPELLANT.
 I
In her first assignment of error, appellant maintains the trial court erred in failing to order appellee to respond to questions posed to her by appellant's counsel during her deposition. Specifically, appellant takes issue with the trial court's denial of her April 15, 1997 Motion to Compel Discovery in which she moved the court for an order compelling appellee to provide information relative to the private patients for whom appellee cared while she worked for appellant. Civ. R. 26 provides the parties to an action with broad powers of discovery. Civ. R. 26(B)(1) states: Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
A trial court has considerable discretion in the regulation of discovery, and may limit a request when it is broad and the party seeking the discovery fails to show the likelihood relevant evidence will be obtained. See, Bland v. Graves (1993), 85 Ohio App.3d 644, 659. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. In order to determine whether the trial court abused its discretion in overruling appellant's motion to compel, we must analyze the relevancy of the information sought in light of appellant's counterclaim and appellee's amended complaint. Appellant argues the trial court's refusal to order appellee to provide the requested information prevented her (appellant) from pursuing her counterclaim. Even though the information appellant sought was arguably relevant to her counterclaim and the trial court may have erred in overruling her motion to compel, we find any error is moot given appellant's voluntary dismissal of her counterclaim. With respect to the claims asserted in appellee's amended complaint, we find the information sought is only marginally relevant. As such, we cannot find the trial court abused its discretion in overruling appellant's motion to compel. Appellant's first assignment of error is overruled.
 II
In her second assignment of error, appellant contends the trial court erred in awarding judgment in favor of appellee in the amount of $2400 on her breach of contract claim. Appellant submits appellee conducted only one assessment for Caring Hands during the months of June, July, and August, 1995; therefore, the $300 payment in July, 1995, represented all the compensation to which appellee was entitled. We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279. The record reveals the parties discussed appellee's compensation on June 29, 1995. Although appellee initially demanded a salary of $600 per week, the parties eventually agreed upon a figure of $300 per week. In July, 1995, appellant presented appellee with her first and only paycheck in the amount of $300. During her deposition, appellant acknowledged she agreed to pay appellee $300 per week, regardless of the work appellee actually performed. At trial, appellant denied the parties ever reached an agreement in which appellant would pay appellee $300 per week. Upon review of the record and in light of appellant's own admission in her deposition, we find the trial court's awarding appellee judgment in the amount of $2400 on her claim of breach of contract is not against the manifest weight of the evidence. The trial court was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Given appellant's deposition testimony and appellee's trial testimony, the trial court had sufficient evidence from which to conclude appellant agreed to pay appellee $300 per week. In its conclusions of law in its June 23, 1998 Judgment Entry, the trial court stated: [Appellee] has proved by a preponderance of the evidence that a contract of employment existed between [appellee] and [appellant] commencing 6/29/95 and ending 8/31/95. The amount of the contract relating to [appellee's] employment with [appellant] is Three Hundred Dollars ($300.00) per week for an eight (8) week period encompassed by 6/29/95 and 8/31/95 totaling Twenty-Four Hundred Dollars ($2,400.00). [Appellee] has proved by a preponderance of the evidence that an offer of employment with [appellant's] business at the rate of Three Hundred Dollars ($300.00) compensation was made by [appellant] accepted by [appellee] and good and valuable consideration given by both [appellee] and [appellant] existed.
Although the trial court concluded, "the amount of the contract relating to [appellee's] employment with [appellant] is Three Hundred Dollars ($300.00) per week for an eight (8) week period encompassed by 6/29/95 and 8/31/95 totaling Twenty-Four Hundred Dollars ($2,400.00)," the period between June 29, 1995, and August 31, 1995, is actually nine weeks. Given the trial court's determination appellee's salary was $300 per week, judgment should have been awarded in the amount of $2700. In light of the trial court's recognition of the $300 payment, we find the trial court clearly credited that payment in rendering judgment to appellee in the amount of $2400. Appellant's second assignment of error is overruled.
 III
In her third assignment of error, appellant asserts the trial court erred in awarding appellee damages in the amount of $131.40 on appellee's R.C.4113.15 claim. Appellant's argument reads, in its entirety, "The Statute provides that an employer fails to pay wages or compensation that was due in an untimely manner, namely, sixty (60) days, the same was never determined due in this matter until the trial court of this case and for which reason, Appellant could not be assessed a penalty." Appellant's Brief at 7. R.C. 4113.15(B) provides: Where wages remain unpaid for thirty days beyond the regularly scheduled payday or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a claim or for sixty days beyond the date of the agreement, award, or other act making wages payable and no contest court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six percent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater.
The following dialogue occurred during appellant's deposition: Q. [Appellee's counsel]: . . . And have you tendered payment to [appellee] for the work that she's gone uncompensated for?
A. [Appellant]: No, sir.
* * *
Q. Okay. Do you have a total of what you have agreed that she needs [to be] compensated for?
A. Yes, sir.
Q. How much is that?
A. $2,190.
Q. Yet, to this day, you have not written a check and offered this to her?
A. No, sir.
Deposition of Shirley Wilson, March 5, 1997, at 36-37.
In her Reply Brief, appellant contends, "the Appellee did not accept the offer made by appellant and so there was a dispute concerning the amount due here which was not resolved until the judgment was filed herein June 23, 1998, from which an appeal is now pending." Defendant-Appellant's Reply Brief at 6. Upon review of the record, we find no evidence to support appellant's contention she offered, and appellee rejected, any compensation. In fact, the record belies such an assertion. During her deposition, appellant conceded she owed appellee $2,190 in wages and failed to pay appellee those wages. Pursuant to the statute, appellee was entitled to six percent of the unpaid wages ($2,190), or $131.40. Accordingly, we find the trial court did not err in awarding appellee damages on her R.C.4113.15 claim. Appellant's third assignment of error is overruled.
 IV
In her fourth assignment of error, appellant submits the trial court erred in failing to grant her motion to dismiss at the close of appellee's case, and renewed at the close of all the evidence. Specifically, appellant maintains appellee should not have succeeded on her quantum meruit claim because appellee failed to present any evidence as to the quantity or quality of the work performed, or the benefits provided to appellant. Civ. R. 41(B)(2) provides, in part: After the plaintiff, in an action tried by the court without a jury, has completed presentation of his evidence, the defendant, * * * may move for a dismissal on the grounds that upon the facts and the law, the plaintiff has shown no right to relief.
"A trial court's ruling on a Civ. R. 41(B)(2) motion will be set aside on appeal only if it is erroneous as a matter of law or against the manifest weight of the evidence." Ogan v. Ogan (1997), 122 Ohio App.3d 580, 583
(Citation omitted). "Generally, a party who establishes his right to be compensated on quantum meruit should recover only as much as he reasonably deserves for his services, and no more." Sonkin Melena Co. L.P.A. v. Zaransky (1992), 83 Ohio App.3d 169, 176. A party does not have to show how much work she performed in order to recover under quantum meruit, but rather must show evidence she performed some services for another's benefit and was not paid for those services. Id. At trial, the testimony revealed appellee served as Director of Nurses for appellant's business. In this capacity, appellee performed a variety of duties, including training employees; providing in-service sessions for employees; conducting home visits and patient assessments; and completing paperwork and certification materials. Additionally, appellee assumed and maintained overall supervision and responsibility for the business' employees, including L.P.N. and nursing aides. Further, appellee was the only individual associated with appellant's agency, including appellant herself, who was qualified and licensed to supervise and assume responsibility for the employees and care provided by the business. Moreover, the State of Ohio requires an agency to have a registered nurse in its employ in order to participate in subsidized health care programs. Appellee served appellant's business in this capacity. Appellant does not dispute she failed to compensate appellee, other than the $300 payment in July, 1995, for the services appellee rendered on her behalf. We find appellee presented sufficient evidence to show she performed some services for appellant's benefit and was not paid for those services. In order to assert a successful claim of quantum meruit, appellee was not required to present evidence as to the quantity or the quality of the work performed, or the benefits received by appellant. Accordingly, we find the trial court did not err in overruling appellant's motion to dismiss or in awarding appellee $5,000 on her quantum meruit claim. Appellant's fourth assignment of error is overruled.
The June 23, 1998 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed.
By: Hoffman, J. Wise, P.J. and Farmer, J. concur